1

2        **IN THE UNITED STATES DISTRICT COURT**

3        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

4

5    JUANITA TOVAR and IGNACIO                    CASE NO. CV F 06-0351 LJO TAG
     SANDOVAL,
6
                    Plaintiffs,                   **ORDER ON DEFENDANTS' MOTION FOR**
7                                                 **SUMMARY JUDGMENT** (Doc. 23)

8        vs.

9    CITY OF FRESNO and STEVEN
     WILLIAMS, individually and in his
10   capacity as an employee of the City
     of Fresno,
11
                    Defendants.
12   _____/

13                              **I. INTRODUCTION**

14        Defendants City of Fresno and Sergeant Steven Williams, individually and in his capacity as an

15   employee of the City of Fresno (collectively, "Defendants"), seek summary judgment on all of Plaintiffs

16   Juanita Tovar's ("Ms. Tovar's) and Ignacio Sandoval's ('Mr. Sandoval's') claims stemming from the

17   execution of a search warrant at their residence by members of the City of Fresno Police Department

18   ("Police"). Ms. Tovar opposes this motion, claiming, among other things, that Defendants did not have

19   probable cause for the search warrant, did not knock and announce, did not show Plaintiffs the search

20   warrant, unreasonably detained Plaintiffs, used unreasonable force and discriminated against her because

21   she is Latina. Mr. Sandoval does not oppose this motion. For the following reasons, Defendants'

22   motion for summary judgment is GRANTED in FULL.

23

24                              **II. BACKGROUND**

25        This action stems from the execution of a search warrant at 4823 E. Jensen Street (sometimes

26   referred to as "subject residence") in Fresno, California by members of the City of Fresno Police

27   Department on June 16, 2004.  Ms. Tovar lived at the subject residence with her husband Ignacio

28   Sandoval.  On June 16, 2007, Detective Lincoln prepared and submitted a search warrant to search the

                                          1

1   subject residence for evidence of drug trafficking and manufacturing.  The affidavit for the search

2   warrant was prepared on information from an investigation by Detective Robert Lincoln on a person

3   suspected of manufacturing methamphetamine.  The search warrant was signed by a Fresno County

4   Superior Court Judge.

5        Approximately 7-10 members of the Major Narcotics Unit traveled to the subject residence to

6   execute the search warrant, including Sergeant Williams, who was in charge of the overall execution of

7   the search warrant. Every detective on the search team was armed with a handgun and all detectives on

8   the perimeter had their service weapons out and pointed at the residence during the entry.   At

9   approximately 7:30 p.m., Ms. Tovar heard yelling from outside her house.  She looked out the window

10  and saw men with guns wearing black clothing.  She also heard banging on the door.  She went to the

11  door and it was opened shortly after the police officers had begun to force entry.

12       Ms. Tovar was instructed to exit the house and was escorted outside by police officers.  Ms.

13  Tovar was asked if she knew the suspected drug manufacturer.  After two detectives performed a

14  protective sweep, and her husband was located in the bedroom, Detective Lincoln informed Sergeant

15  Williams that based on his conversation with Ms. Tovar, he did not believe she was involved in the

16  criminal activity which was the subject of his investigation.  Sergeant Williams decided not to have the

17  detectives perform a search of the residence in spite of having a search warrant.  When leaving, Sergeant

18  Williams referred Ms. Tovar to the City of Fresno's risk management office in relation to the damaged

19  door and fence.

20

21   **III. DISCUSSION**

22  **A.     Standard of Review**

23       On summary judgment, a court must decide whether there is a "genuine issue as to any material

24  fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia

25  Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985);

26  *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).  The criteria

27  of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

28  242, 248 (1986).  The requirement that an issue be "genuine" relates to the quantum of evidence the

1  plaintiff must produce to defeat the defendant's summary judgment motion.  There must be sufficient

2  evidence "that a reasonable jury could return a verdict for the nonmoving party."  *Anderson,* 477 U.S.

3  at 248.

4      "As to materiality, the substantive law will identify which facts are material."  *Anderson*, 477

5  U.S. at 248.  "[A] complete failure of proof concerning an essential element of the non-moving party's

6  case necessarily renders all other facts immaterial," and in such circumstances, summary judgment

7  should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry

8  of summary judgment, as set forth in Rule 56 ©, is satisfied."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

9  322 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the

10  court those portions of the material on file that it believes demonstrates the absence of any genuine

11  issues of material fact," the burden of production shifts and the nonmoving party must set forth specific

12  facts showing that there is a genuine issue for trial.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

13  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

14      To establish the existence of a factual dispute, the opposing party need not establish a material

15  issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to

16  require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank*

17  *of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631.  The opposing

18  party "must do more than simply show that there is some metaphysical doubt as to the material facts.

19  . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

20  party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).  The

21  opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the

22  facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255;

23  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

24

25      F.R.Civ.P. 56(e) requires a party opposing summary judgment to "set forth specific facts showing

26  that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if

27  appropriate, shall be entered against the adverse party."  "In the absence of specific facts, as opposed to

28  allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment

3

1   motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.

2   1988).  When a summary judgment motion is unopposed, a court must "determine whether summary

3   judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment

4   as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).

5   A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but,

6   rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363

7   F.3d 1099, 1101 (11th Cir. 2004).  A court "need not sua sponte review all of the evidentiary materials

8   on file at the time the motion is granted, but must ensure that the motion itself is supported by

9   evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

10  **B.   Mr. Sandoval's Claims**

11       **1.   Factual and Procedural History**

12       Mr. Sandoval was in the bedroom when the search warrant was executed.  He looked out the

13  window and saw men outside wearing black and pointing guns at him.  When the police entered the

14  subject residence, they located him in the bedroom.  There, Mr. Sandoval claims that guns were pointed

15  at him and he was told to get on the floor.  Mr. Sandoval was then taken outside, but no physical pain

16  was caused by any of the detectives.

17       In September 2006, Mr. Sandoval signed a letter and represented to his counsel that he did not

18  want to be represented anymore and did not want to pursue his claims.  On October 10, 2006, counsel

19  for the plaintiffs represented to counsel for Defendants that Mr. Sandoval was no longer being

20  represented by Tafoya & Associates.  On October 11, 2006, Mr. Sandoval and Fernado Tafoya executed

21  a Request for Approval of Substitution of Attorney, as well as a Notice of Dismissal, signed by Mr.

22  Sandoval.  On October 12, 2006, counsel for plaintiffs represented on the record that Mr. Sandoval was

23  no longer being represented by Tafoya & Associates and was dismissing his case.  Neither the Notice

24  of Dismissal nor the Request for Approval of Substitution of Attorney was ever filed with the Court.

25       Eight months later, on June 28, 2007, counsel for plaintiffs filed a Motion to Withdraw as

26  Attorney.  That motion was without explanation and not in accordance with either Local Rule 83-182(d)

27  or Local Rule 78-230(b).  The Court also noted that there was a pending Motion for Summary Judgment

28  scheduled to be heard on August 6, 2007, a pre-trial conference set for August 29, 2007, and a jury trial

set for October 9, 2007.  In denying the motion on non-compliance grounds, the Court advised, "If counsel wishes to re-file this motion in accordance with the requirements of the law, he may do so.  The issue of prejudice at this late date must be addressed."  Order Denying Motion to Withdraw (Doc. 24).  Counsel did not re-file the Motion to Withdraw.

Through this summary judgment motion, the Court became aware of the issue specifically regarding representation of Mr. Sandoval.  A hearing took place on August 1, 2007.  Counsel for Mr. Sandoval represented that he does  not have current contact with his client.  He further represented that although Mr. Sandoval did wish to dismiss his claims, he says it was conditioned on a stipulation from Defendants that he would not be responsible for costs and fees.  Counsel then offered to submit a Notice of Dismissal, despite his representation that he had no authority from his client to do so.  The Court found that this issue is between attorney and client. Thus, the Court ruled that it would make a decision on Mr. Sandoval's case based on the merits and confirmed with plaintiff's counsel that he was still representing Mr. Sandoval.

### 2.    Mr. Sandoval's non-opposition to the present motion

In opposition to the motion for summary judgment, the totality of facts and legal arguments in support of Mr. Sandoval's claims is

> Plaintiff denies that this is undisputed because Ignacio Sandoval was still not willing to dismiss his case until Defendants waive costs and fees and without any condition. However, Defendants agree to waive costs and fees but on one condition that Mr. Sandoval will not be called as a witness, which Plaintiff objected to because such unreasonable request amounts to an obstruction of justice.

Pl. Opp. Mot. Summary Judgment, 9.  The rest of the opposition, including argument and exhibits, relates to Ms. Tovar only.  Therefore, this Court finds that Mr. Sandoval does not oppose this motion for summary judgment substantively.

### 3.    Mr. Sandoval's claims

Although the complaint alleges all claims against Defendants by both Plaintiffs, Mr. Sandoval has not articulated any legal argument, nor produced any facts, in support of any of his claims.  "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). Mr. Sandoval admitted that he was not harmed when he

saw the police pointing the guns outside through the window, when they came into his bedroom, or when they escorted him outside.  The facts further show that the police officers acted within reason in executing the search warrant.  The opinion of Plaintiffs' own expert witness is that "the execution of the search warrant was accomplished within standards utilized by law enforcement agencies throughout the State. Meaning their approach, knock notice and eventual protective sweep were all done within reason." (Declaration of Ali Nehme, Ex. 13, Supplemental Report of Ed Tatosian, p. 5) ("Plaintiffs' expert report").

The facts do not support any claims by Mr. Sandoval that his Fourth or Fourteenth Amendments were violated.  Even though Mr. Sandoval was in the bedroom, detectives were not obligated to assume that he did not present a danger.  See *Los Angeles County v. Rettele*, 127 S. Ct. 1989, 1993 (2007).  As such, the police officers acted within reason in the initial sweep prior to executing the search warrant to protect their safety and the possible preservation of evidence in a residence which they believed to be connected with the manufacture and distribution of methamphetamine.  As to the rest of Mr. Sandoval's claims, a court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.  The Court has reviewed the arguments by Defendants and finds that they are supported by law. See, *infra*.  Accordingly, Defendants motion for summary adjudication for all claims by Mr. Sandoval are GRANTED.

**C.     First Cause of Action–Federal Claims Against all Defendants**

Ms. Tovar bases her  first cause of action, relating to several claims of Constitutional violations, on 42 U.S.C. §1983.  42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004).  Section 1983 provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865 (1989).

To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitutional or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988).  Ms. Tovar claims that the conduct of the police during the execution of the search

warrant violated her Constitutional rights in the following ways: (1) the right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments, (2) the right to be free from excessive force by police officers as guaranteed by the Fourth and Fourteenth Amendments, (3) the right not to be deprived of life, liberty, or property without due process of the law, as guaranteed by the Fourteenth Amendment, and (4) the right to equal protection of the laws as guaranteed by the Fourteenth Amendment.

**1.    Fourth Amendment Unreasonable Search Claims**

**a.    Probable Cause**

The Fourth Amendment ensures that citizens are "secure in their persons...against unreasonable search and seizures." U.S. Const., amend. IV.  Reasonableness requires that a search is performed with a warrant upon probable cause. *Katz v. United States*, 389 U.S. 347, 357 (1967).  Probable cause is "a fluid concept-turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  It is less than proof beyond a reasonable doubt,  less than a preponderance of the evidence,  and less than a prima facie showing.  *Id*. at 235.  Under California Penal Code §1524(a)(4), a search warrant may be issued "[w]hen the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony."

Ms. Tovar argues that there was a lack of probable cause for a search warrant at 4823 E. Jensen for the following reasons: (1) Detective Lincoln admitted that he never saw the suspect Ortiz entering the house located on 4823 E. Jensen; (2) Detective Lincoln and the confidential informant never met with the suspect at 4823 E. Jensen; (3) although that address was listed on the suspect's DMV records, a Notice of a Court Order was mailed to that address and returned unclaimed prior to the execution of the warrant; (4) Detective Lincoln did not check the public utilities records; (5) the Warrantless Arrest Declaration listed the suspects address as 4833 E. Jensen (rather than 4823); and (6) the Arrest Report, which was made out two hours before the search warrant issued, also listed the suspect as residing at 4833 E. Jensen.  Defendants offer the following evidence in support of the warrant: (1) DMV records for the suspect indicated that 4823 E. Jensen was his residence; (2) the undercover agent met with the suspect directly across the street from 4823 E. Jensen; (3) the suspect went into the area of the subject

1    residence and returned shortly thereafter with money; (4) the suspect's vehicle was observed as parked

2    in front of the subject residence during surveillance; and (5) separate surveillance observed the suspect

3    leave the area of the subject residence.

4         In reviewing probable cause determinations, "[s]ignificant deference" is given to the magistrate

5    judge's original determination. *United States v. Fulbright*, 105 F.3d 443, 454 (9th Cir. 1997). Further,

6    a party is entitled to challenge the truth of the statements in the supporting affidavit for a search warrant

7    only "where [a party] makes a substantial preliminary showing that a false statement knowingly and

8    intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

9    affidavit." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Thus, Ms. Tovar would need to provide

10   evidence that the police officers acted intentionally or recklessly in procuring the search warrant.

11        Here, there was an on-going investigation for drug manufacturing and sales, including

12   verification obtained from a reliable informant and information from an undercover agent who witnessed

13   the suspect drive and park near the residence on multiple occasions. There was also inquiry into

14   Department of Motor Vehicle Records, which listed the address of the suspect as 4823 E. Jensen.

15   Although Ms. Tovar objects to the testimony concerning the confidential informant, a magistrate judge

16   may consider hearsay information as part of the probable cause determination for a search warrant.

17   *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Under *Franks, supra*, it is not enough to claim that the

18   affiant was negligent. They must prove that the misinformation was provided intentionally or recklessly.

19   Ms. Tovar has not provided any evidence to satisfy this heightened mens rea requirement.

20        In discussing the execution of the search warrant on the subject residence, Detective Lincoln,

21   stated, "It was–I believe now it to be false. I believe that my–I'm not going to say that I didn't make a

22   mistake." Deposition of Lincoln, 64:16-19. However, the Fourth Amendment is not violated solely by

23   a mistaken execution of a valid search warrant on the wrong premises. *L.A. County v. Rettele*, 127 S.

24   Ct. 1989 (2007) (search did not violate Fourth Amendment where search warrant executed on home

25   despite its sale four months prior and search discontinued within reasonable time); *Graham v. Connor*,

26   490 U.S. 386 (1989); *Maryland v. Garrison*, 480 U.S. 79 (1987) (search does not violate Fourth

27   Amendment when police entered adjacent apartment and discontinued search as soon as they became

28   aware of that fact). The Supreme Court has recognized that police officers have "latitude for honest

8

1   mistakes that are made by officers in the dangerous and difficult process of making arrests and executing

2   search warrants." *Maryland v. Garrison*, 480 U.S. 79, 88 (1987).

> The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like [plaintiffs] unfortunately bear the cost. When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated.

6   *L.A. County v. Rettele*, 127 S. Ct. 1989, 1994-95. At most, the evidence shows no more than an honest

7   mistake. Accordingly, Defendants' motion for summary adjudication on this issue is GRANTED.

8                  **b.    Search Warrant Execution Issues**

9                  **I.    Knock and Announce**

10      Plaintiffs claim that in executing the warrant, the Narcotics Unit did not "knock and announce"

11  their presence. The Fourth Amendment "mandate[s] that police officers entering a dwelling pursuant

12  to a search warrant announce their purpose and authority and either wait a reasonable amount of time

13  or be refused admittance before forcibly entering [a] residence." *United States v. Bynum*, 362 F.3d 574,

14  579 (9th Cir. 2004)." In this motion,   Defendants present evidence that police officers executing the

15  search warrant properly knocked and announced their presence. See Lincoln Depo, 36:9-14, 41:13-15;

16  Robles Dep., 38:4-12; Williams Depo., 30:6-11.

17      When a party moving for summary judgment has carried its burden under Rule 56©, "its

18  opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

19  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.

20  2d 538 (1986). Although Plaintiff asserts that police did not knock and announce, her  deposition

21  testimony suggests otherwise. Plaintiff states:

22      A.    When I heard all the screaming and yelling and the fence being broken, I looked out the window and I saw them.
23                                  ***
        Q.    Were you able to understand what was being said when you looked out the window?
24
        A.    No, Sir. They were just yelling and screaming and making noises, banging, and just–
25
                                    ***
26      Q.    What's the next thing you recall?
        A.    I ran to the front door and they were banging my door, another group, and I asked
27            them to please wait, to wait, I'd open the door...
                                    ***
28      A.    I just remember telling them to please wait, I would open the door, but they were

                                        9

banging and banging.

Deposition of Juanita Tovar ("Tovar Dep."), 59:5-60:24.  Thus, Ms. Tovar acknowledges that she heard yelling and banging outside of the residence, including her front door, which prompted her to go to the front door prior to the entry of the police officers.  As Defendants point out, Ms. Tovar cannot create a triable issue of fact by declaration contradicting her own deposition or other sworn testimony. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001).

The party opposing the motion may not rest upon the mere allegations or denials of their pleadings, but instead must produce some significant, probative evidence tending to contradict the moving party's allegations, thereby creating a genuine question of fact for resolution at trial. *Anderson*, 477 U.S. at 248, 256-57; 106 S. Ct. at 2510, 2513-14.  Plaintiff bears the burden of establishing the actions complained of constituted a violation of her constitutional rights. See, e.g., *Hydrick v. Hunter*, 466 F.3d 676, 705-06 (9th Cir. 2006).   Ms. Tovar has presented no authority supporting her assertion that because she did not recognize the precise words that were spoken by the officers, a constitutional violation occurred.

Even Ms. Tovar's expert opined that the police officers acted reasonably.  Ms.  Tovar's expert reported that "the execution of the search warrant was accomplished within standards utilized by law enforcement agencies throughout the State. Meaning their approach, knock notice and eventual protective sweep were all done within reason." (Declaration of Ali Nehme, Ex. 13, Supplemental Report of Ed Tatosian, p. 5) ("Plaintiffs' expert report").    Accordingly, Defendants' motion to summary adjudication on this claim is GRANTED.

### ii.	Reasonable detention

Officers executing a search warrant for contraband have the authority to "detain the occupants of the premises while a proper search." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  "An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Id.* (quoting *Summers*, 452 U.S. 692, 705, n. 19). Thus, Plaintiffs' detention for the duration of the search was reasonable,  because a warrant existed to search 4823 E. Jensen and

1   she was an occupant of that address at the time of the search. See *Muehler,* 544 U.S. 93 (Plaintiffs'

2   detention for the duration of the search was reasonable,  because a warrant existed to search the address

3   and she was an occupant of that address at the time of the search).  See also, *Michigan v. Summers*, 452

4   U.S. 692, 705.

5        Ms. Tovar claims that she was unreasonably detained because she was brought outside her home

6   in her bathrobe while being surrounded by male police officers with their guns pointed at her.  In *L.A.*

7   *County v. Rettele, supra*, while executing a search warrant at the wrong house, police officers made

8   plaintiffs stand naked for 1-2 minutes in their bedroom.  The Supreme Court found that this was not an

9   unreasonable detention, because "Officers executing search warrants on occasion enter a house when

10  residents are engaged in private activity; and the resulting frustration, embarrassment, and humiliation

11  may be real, as was true here.  When officers execute a valid warrant and act in a reasonable manner to

12  protect themselves from harm, however, the Fourth Amendment is not violated." *Id*. at 1994.  Further,

13  the Supreme Court has discussed links between drugs and violence in *Michigan v. Summers*, 452 U.S.

14  692, 702 (1981) and the likelihood that drug dealers will dispose of drugs before police seize them in

15  *Ker v. California*, 374 U.S. 23, 28, n.3 83 S. Ct. 1623 (1963).  Here, Ms. Tovar stood outside, covered

16  in her bathroom, for a short time.  This experience, while perhaps embarrassing to her, is less egregious

17  than that in *L.A. County, supra,* and does not rise to the level of a constitutional violation.  Accordingly,

18  Defendants' motion for summary adjudication on this issue is GRANTED.

19              **iii.    Display Search Warrant**

20        Defendants argue that there is no Constitutional requirement to display a search warrant. In

21  support of this position, Defendants cite *West Covina v. Perkins*, 525 U.S. 234, 240, n.1 (1999) (Scalia,

22  J, dissenting) ("Although we have never addressed the issue, there is near unanimous agreement among

23  the lowers courts that the notice requirements imposed by Federal Rule of Criminal Procedure 41(d) are

24  not required by the Fourth Amendment. See LaFave, Search and Seizure: A Treatise on the Fourth

25  Amendment § 4.12 (3d ed. 1996)).[1]  Ms. Tovar's entire argument on this issue is reproduced below:

26        Plaintiff was entitled to see the search warrant because a particular warrant also "assures

27  _____

28        [1]Defendants did not indicate that the statements upon which they relied were found in dissent, nor did they indicate that the display of a search warrant was not the issue in the cited case.

11

1    the individual whose property sized of the lawful authority of the executing officer, his
     need to search, and the limits of his power', See, *United States v. Chadwick*, 433 U.S.
2    523, 532, (1977).[2]  Here the officers seized Plaintiff's residence, her property with no
     explanation and without providing her a copy of the warrant after having invaded her
3    home by Fresno officers all pointing rifles and guns at her the entire time.

4    Pl. Opp. Summary Judgment, 13 (punctuation and grammar in original).[3]

5         It is clear that there is a statutory requirement that an officer show a copy of a warrant to the

6    person from whom or from whose premises property is taken.  See, e.g. Fed. R. Crim. P. 41(d).  It is also

7    clear that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure

8    requires the executing officer to serve the warrant on the owner before commencing the search." *Groh*

9    *v. Ramirez*, 540 U.S. 551, 562 n.5,  124 S. Ct. 1284, 1292  (2004).   An updated version of LaFave's

10   treatise indicates, however, that cases subsequent to Justice Scalia's footnote in dissent may have slightly

11   shifted the law in this area.    In *Groh*, the Court does construe there is a Fourth Amendment right

12   implicated in the particularity requirement, because the "high function" of a search warrant "is not

13   necessarily vindicated when some other document, somewhere, says something about the objects of the

14   search, but the contents of that document are neither known to the person whose home is being searched

15   nor available for her inspection." 540 U.S. 551, 557.

16        That assertion, which is the sum total of the discussion of the issue at that point in the
          case, seems to indicate that flowing from the Fourth Amendment's particularity
17        requirement is some sort of right of the person at the search scene to learn about the
          warrant's limitations.  But no supporting authority is cited, and the right at this juncture
18        is left essentially undefined, as there is no indication as to whether there is a particular
          way in which the document's contents are to be made "known" to the person, when this
19        is to occur, or indeed whether it is sufficient that the warrant is "available in the sense
          that the burden is on that person to request information about precisely what the warrant
20        authorizes.

21   LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.12(a) (4th ed. 2004)).

22        If Ms. Tovar is able to raise a constitutional issue here, it stems from the particularity

23

24        [2]In *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284 (2004), discussed infra, the Supreme Court quoted this line in
     discussing the particularity requirement of a warrant. This line originated from a statement in *Camara v. Municipal Court*,
25   387 U.S. 523, 87 S.Ct. 1727 (1967), that the warrantless code inspections at issue lacked assurances that the arrest or search
     was not unlawful or intrusive police conduct.

26

27        [3] In her opposition to the instant motion, Ms. Tovar consistently spends only one paragraph in support of each
     allegation that a violation of her fundamental Constitutional rights occurred.  The paragraph cited above is unique, however,
     in that it includes a citation to  legal authority in support of her position.  The Court notes, however, that the proper citation
28   for *United States v. Chadwick* is 433 U.S. 1, 97 S.Ct. 2476 (1977).

1   requirement.  The Fourth Amendment requires that the warrant particularly describe the things to be

2   seized. "A warrant that fails to conform to the particularity requirement of the Fourth Amendment is

3   unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n.5 (1984).   However, the facts in

4   this case do not suggest that the particularity requirement was violated.  Ms. Tovar does not challenge

5   that the items to be seized in the house were not particularly described.  Further, Ms. Tovar's house and

6   address were particularly described and the search warrant particularly indicated Ms. Tovar's house as

7   the address to be searched based on probable cause, as discussed above.  Even if ultimately the police

8   searched the wrong house, the search warrant was valid in that it was based on probable cause and it

9   particularly described the house that police believed to be the residence of the suspect based on

10  surveillance and their investigation into DMV records.  Therefore, there are no facts upon which Ms.

11  Tovar can rely to sustain this argument.   Accordingly, Defendants' motion for summary judgment on

12  this issue is GRANTED.

13                                           **iv.      Property Damage**

14        Ms. Tovar alleges that the property damage was unreasonable because "a simple knock and talk

15  procedure would have helped clarify the situation and avoid the destruction of plaintiff's property." Pl.

16  Opp. Mot. Summary Judgment, 14.  In making this argument, Ms. Tovar misunderstands the standard

17  of proof.  To prove that the property damage were unreasonable, Ms. Tovar would need to allege that

18  the property damage was "unnecessarily destructive behavior, beyond that necessary to execute a warrant

19  effectively." *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997).

20        In this matter, the front door was damaged when the police attempted to force entry and the fence

21  was also damaged in the backyard.  Defendants argue that there is nothing to indicate that any of the

22  property damage was unnecessary to the aim of executing the search warrant.  Defendants claim that the

23  door was damaged due to the slow response of Ms. Tovar to open the door and the fence was damaged

24  because the police put themselves around the perimeter of the residence in order to prevent flight and

25  possible loss of evidence.   Defendants further claim that Plaintiffs were referred to the City of Fresno

26  risk management office in relation to this damage and that the fence and the door are now repaired.  The

27  unopposed facts of this case indicate that the damage was not caused by unnecessarily destructive

28  behavior.  Therefore, Defendants are granted judgment as a matter of law on this issue.

1

2.       **Fourth Amendment Unreasonable Seizure Claims**

2        The seizure of an individual by the police violates the Fourth Amendment if it is objectively

3    unreasonable under the circumstances. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  A person is

4    "seized" within the meaning of the Fourth Amendment "when, by means of physical force or a show of

5    authority, [her] freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 554,

6    100 S. Ct. 1870, 1878 (1980).  Law enforcement officials may detain a buildings occupants while

7    officers execute a search warrant as long as the detention is reasonable.  See *Los Angeles v. Rettele*, 127

8    S. Ct. 1989, 1992-93 (2007).

9        "Determining whether the force used to effect a particular seizure is reasonable under the Fourth

10   Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's

11   Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v.*

12   *Connor*, 490 U.S. 386, 396 (1989).   In this case, the police officers were executing a warrant at a

13   residence which they believed to be associated with the manufacture of methamphetamine, a potentially

14   dangerous situation which could have threatened the lives of the officers.  Ms. Tovar claims that when

15   the police officers entered her home, they escorted her outside and ordered her to stay outside of her

16   property, which deprived her of her free movement and liberty.  The officers' use of force in the form

17   of escorting Ms. Tovar outside the house was reasonable, because the governmental interests of officer

18   safety in a potentially dangerous environment outweigh the marginal intrusion of standing outside for

19   a few minutes while the officers performed the protective sweep.  Furthermore, Ms. Tovar does not

20   claim she was harmed when she was escorted outside, nor does not claim that she was beaten, stricken,

21   or placed in handcuff restraints. Moreover, Ms. Tovar  does she claim that she was detained outside of

22   her home any longer than necessary after that protective sweep was finished.  Therefore, the conduct of

23   the police officers in escorting a building's occupant outside until a protective sweep is performed and

24   the situation is assessed is objectively reasonable.  Finally, Sergeant Williams was not part of the entry

25   team, and would not have been the officers who had physical contact with Ms. Tovar or Mr. Sandoval.

26   Accordingly, Defendants' motion for summary adjudication on this claim is GRANTED.

27       3.       **Fourteenth Amendment Substantive Due Process Claim**

28       The substantive component of the Due Process Clause "forbids the government from depriving

14

a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739 (1987)). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). In their opposition, Plaintiffs have provided no evidence that they are entitled to maintain a Fourteenth Amendment due process claim, as the facts relating to this claim appear to be the same as those supporting their Fourth Amendment claims. But, an alleged failure to observe the requirements of the Fourth Amendment will not support an independent claim for a failure of due process where the facts supporting each claim are identical. *Simons v. Marin County*, 682 F. Supp. 1463, 1470 (N.D. Cal. 1987). Therefore, Plaintiffs cannot maintain independent Fourteenth Amendment claims based on the same allegations made relating to their Fourth Amendment claims. Accordingly, Defendants' motion for summary adjudication on this issue is GRANTED.

### 4.    Fourteenth Amendment Equal Protection Claim

"Proof of racially discriminatory intent or purpose is required to show a violation of the Fourteenth Amendment. *Village of Arlington Heights*, 429 U.S. 252, 265 (1977). Thus, Ms. Tovar must prove that Defendants acted in a discriminatory manner and that the discrimination was intentional." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker...selected or reaffirmed a particular court of action at least in part because of, 'not merely in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Direct evidence of discriminatory purpose and intent may be unavailable. In such a situation, the court must make "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. "The court must therefore look to the totality of the relevant evidence to determine whether invidious discriminatory purpose was a motivating factor for the decision." *Id.* The factors court looks upon include (1) the discriminatory effect of the official action,

1    (2) the historical background of the decision, (3) the specific sequence of events leading up to the

2    challenged decision, (4) departure from the normal procedural sequence, (5) departures from the normal

3    substantive [standards], and (6) legislative or administrative history of the decision. *Id*. at 266-68.

4          Ms. Tovar claims that she was "brutally" treated "like a criminal" because she was of the same

5    race as the suspect.  She offers the following as evidence and argument in support of her discrimination

6    claim: (1) the officers lack of compassion and remorse after they admitted they were at the wrong house;

7    (2) the officers never showed her a search warrant; (3) the officers refused to explain the reason for the

8    sudden invasion until the search was conducted; (4) falsely accusing Ms. Tovar of knowing the suspect;

9    and (5) discouraging Ms. Tovar to file a claim against the City of Fresno.

10         "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

11   insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*,

12   477 U.S. at 252, 106 S. Ct. at 2512. Additionally, the evidence presented in opposition to a motion for

13   summary judgment must be probative and properly supported. *See Zoslaw v. MCA Distrib. Corp.*, 693

14   F.2d 870, 883 (9th Cir. 1982).  Here, Ms. Tovar has not offered a scintilla of evidence to support an

15   official action of discrimination, any direct evidence of intentional discrimination, any departure from

16   normal procedures, or that the adverse treatment was because of her race.  Accordingly, Defendants'

17   motion to summary adjudication on this issue is GRANTED.

18         **5.      Qualified Immunity and *Monell* Liability**

19         Because the Court finds in favor of Defendants in all of the Constitutional issues, the Court need

20   not reach the merits of the arguments regarding qualified immunity or *Monell* liability.  See *L.A. County*

21   *v. Rettele, supra*.

22   **C.     Second Cause of Action–Violation of Cal. Civil Code §51.7**

23         Cal. Civ. Code 51.7 (a) provides that "[a]ll persons within the jurisdiction of this state have the

24   right to be free from violence, or intimidation by threat of violence, committed against their persons or

25   property because of political affiliation, or on account of any characteristic listed or defined in

26   subdivision (b) or (e) of Section 51..."  Race is an enumerated characteristic under section 51.  In order

27   to prevail on this claim, Plaintiffs would have to prove that Defendants committed violence against them

28   and some degree of animus as a motivating factor for that violence.  *Winarto v. Toshiba Am. Elecs.*

16

1   *Components, Inc.*, 274 F.3d 1276, 1290 n. 15 (9th Cir. 2001) ("it is unclear whether the statute requires

2   bias to be the sole motivation, a substantial part of the motivation, or an incidental motivating factor").

3   As set forth above, Plaintiffs do not offer any facts which support their claims based on racial

4   discrimination. While Ms. Tovar does make allegations that she was discriminated against or that certain

5   officers had a racist attitude towards her, there is no evidence to support those bald allegations.

6   Therefore, summary adjudication on this issue is GRANTED.

7   **D.      Third Cause of Action–False Arrest**

8          The intentional tort of false imprisonment "consists of the nonconsensual, intentional

9   confinement of a person, without lawful privilege, for an appreciable length of time." *Scofield v. Critical*

10   *Air Medicine, Inc.,* 45 Cal. App. 4th 990, 1001 (Cal. App. 2d 1996).  Defendants argue that the police

11   officers were lawfully privileged, because they held Ms. Tovar only during period of time necessary for

12   a protective sweep while executing a search warrant authorized by the judge.   Ms. Tovar does not

13   address the issue of whether the Defendants were privileged.  Instead, she argues that because the police

14   officers had their guns pointed at her, she was not free to leave, return home, follow the officers as they

15   swept her home, and she could not use the bathroom.  As discussed in more detail above, police officers

16   have a right  reasonably to detain a person while they are executing a search warrant.  This is especially

17   true when that warrant involves drugs, because of the potential for violence against the safety of the

18   officers and the potential to lose evidence.   The facts described by Ms. Tovar fall within legally

19   permissible conduct during the execution of the warrant and thus were privileged.   Accordingly,

20   Defendants' motion for summary adjudication on this issue is GRANTED.

21   **E.      Fourth Cause of Action–Assault and Battery**

22          To maintain their assault and battery claims, Plaintiffs must establish that the force used by

23   Defendants was unreasonable under the circumstances. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269,

24   1274 (Cal. App. 4th 1998).  Without citing any legal authority or evidence, Plaintiffs entire argument on

25   the issue of assault and battery is:

26          Defendants with they [sic] weapons pointed at plaintiff and with the threat to shoot in
             fact creates [sic] a reasonable apprehension which amounts to Assault.  Pushing an
27          elderly woman out of her home is in fact an offensive touching that had occurred [sic]
             without permission [sic] amounts to the commission of Battery.

28

17

1   Pl. Opp. Mot. Summary Judgment, 16 (grammar and punctuation in original).  As set forth above, the

2   undisputed material facts demonstrate that the force applied was legally permissible under the

3   circumstances.  Accordingly, summary adjudication is appropriate for this claim.

4       **F.**    **Fifth Cause of Action–Intentional Infliction of Emotional Distress**

5       The elements for the tort of intentional infliction of emotional distress are: (1) extreme and

6   outrageous conduct by the defendant; (2) an intention by defendant to cause, or reckless disregard of the

7   probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional

8   distress; and (4) actual and proximate causal link between the tortious conduct and the emotional

9   distress.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal 4th 965 (1993). "Whether treated as an element

10  of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was

11  unprivileged."  *Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979).

12      "Officers executing search warrants on occasion enter a house when residents are engaged in

13  private activity; and the resulting frustration, embarrassment, and humiliation may be real, as was true

14  here." *L.A. County v. Rettele, supra*, at 1994.   Ms. Tovar was afraid when the police were at her house

15  with guns.  Ms. Tovar urinated on herself when she was outside the house while the officers performed

16  the protective sweep.  While this is evidence that Ms. Tovar suffered distress, there is no evidence that

17  the police officers' conduct was so "extreme as to exceed all bounds of that usually tolerated in a

18  civilized community."  *Melorich Builders, Inc. v. Superior Court*, 160 Cal. App. 3d 931, 936 (1984).

19   Further, as discussed *supra*, the police officers had a right reasonably to keep Ms. Tovar outside while

20  they secured the area.  Therefore, this claim must also fail as a matter of law.

21

22                  **IV. CONCLUSION**

23  For the foregoing reasons, the Court ORDERS as follows:

24      A.    Defendants' motion for summary judgment is GRANTED IN FULL (Doc. 23);

25      B.    The hearing currently set for August 6, 2007 is VACATED; and

26      C.    The clerk of court is directed to CLOSE this case.

27  IT IS SO ORDERED.

28  **Dated:   August 3, 2007**            **/s/ Lawrence J. O'Neill**

1                    UNITED STATES DISTRICT JUDGE